**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSE LUIS MACIEL, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 14 C 0784 |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Jose Luis Maciel's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Mr. Maciel's Section 2255 motion and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**PROCEDURAL BACKGROUND**

On August 2, 2010, a criminal complaint charged Mr. Maciel with knowingly and intentionally distributing a controlled substance, namely, five kilograms or more of mixtures and substances containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1). On August 19, 2010, a grand jury returned an indictment charging Mr. Maciel with two counts of distributing five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1), and two counts of using a communication facility in aid of a controlled substance offense in violation of 21 U.S.C. § 843(b). On June 13, 2012, following a trial, the jury found Mr. Maciel guilty on all counts of the indictment. On September 13, 2012, the Court sentenced Mr. Maciel to 188 months imprisonment, which was at the low end of Mr. Maciel's 188 to 235 month sentencing

guidelines range.

On September 27, 2012, Mr. Maciel filed a notice of appeal and subsequently argued on appeal that the Court erred in failing to apply a two-level minor role reduction to his offense level pursuant to U.S.S.G. § 3B1.2. Mr. Maciel did not request such a reduction at the time of sentencing. On August 9, 2013, the United States Court of Appeals for the Seventh Circuit affirmed Mr. Maciel's conviction and sentence concluding that the Court did not commit plain error by accepting the Presentence Investigation Report's ("PSR") guidelines calculation and not raising the minor role reduction sua sponte. *See United States v. Maciel,* 527 Fed. Appx. 543, 544 (7th Cir. 2013). Mr. Maciel brought the present Section 2255 motion on February 3, 2014. The government does not challenge the timeliness of Macial's motion.

## FACTUAL BACKGROUND

On two separate occasions in 2010, Mr. Maciel, a truck driver, delivered kilogram quantities of cocaine at the same gas station located in Morris, Illinois. First, on March 19, 2010, Mr. Maciel coordinated the delivery of 20 kilograms of cocaine from a cocaine supplier to the Chicago-based workers of a Mexican drug-trafficking organization. More specifically, he met with Roberto Sandoval-Velasco at a Marathon gas station for the purpose of delivering 20 kilograms of cocaine. Mr. Maciel, who identified himself as "Mascarita," told Sandoval-Velasco that he would "prepare the dinner," meaning that he would make the cocaine ready for delivery. At approximately 6:00 p.m. on March 19, 2010, Mr. Maciel parked his white tractor-trailer at the Marathon station. Inside the trailer, Mr. Maciel had the 20 kilograms of cocaine stored inside of a duffel bag. At approximately 6:34 p.m., Sandoval-Velasco and Antonio Mendoza drove into the lot of the Marathon station and parked next to Mr. Maciel's tractor-trailer. At that time, Mr.

2

Maciel left the tractor and walked to the rear of the trailer. Sandoval-Velasco and Mendoza then drove their car toward the rear of the trailer. Mr. Maciel retrieved the duffel bag containing 20 kilograms of cocaine from the rear of the trailer and passed the bag into the passenger window of Sandoval-Velasco's car. After receiving the duffel bag, Sandoval-Velasco and Mendoza drove out of the parking lot. Following this exchange, Sandoval-Velasco called Mr. Maciel to confirm the number of kilograms of cocaine, specifically asking, "How many units were those?" to which Mr. Maciel replied, "Those girls were twenty-years old," meaning that he delivered 20 kilograms of cocaine.

On August 1, 2010, Mr. Maciel returned to the same Marathon gas station in Morris, Illinois in his white tractor-trailer carrying 45 kilograms of cocaine. At approximately 8:55 p.m., Victor Manuel Diaz-Rios drove to the Marathon gas station in a red Jeep for the purpose of receiving the 45 kilograms of cocaine from Mr. Maciel. During the meeting, Mr. Maciel handed Diaz-Rios a duffel bag and a cardboard box. There were 20 kilograms of cocaine in the duffel bag and 25 kilograms of cocaine in the cardboard box. Also, there was a rubber-banded bundle of $2,000 in cash on the center console of the Jeep.

At trial, the government presented evidence, including Title III interceptions and surveillance photographs, that Mr. Maciel delivered kilogram quantities of cocaine on behalf of a narcotics supplier, who supplied kilograms of cocaine to the Mexico-based drug-trafficking organization for whom Mendoza and Sandoval-Velasco worked in the Chicago area. DEA special agents and task force officers, who were conducting surveillance at the Marathon gas station on March 19 and August 1, 2010, testified to observing Mr. Maciel deliver the kilograms of cocaine. The DEA agents also presented photographs showing Mr. Maciel delivering a duffel

bag containing 20 kilograms of cocaine to Sandoval-Velasco on March 19, 2010.

Further, the DEA agents stated that they observed Mr. Maciel deliver 45 kilograms of cocaine to Diaz-Rios on August 1, 2010 and that they seized the 45 kilograms on that same date. In addition, one of the kilograms of cocaine had Mr. Maciel's fingerprint on it. The agents further explained that they recovered $2,000 from Diaz-Rios' Jeep that the government argued Diaz-Rios intended to use as payment to Mr. Maciel. Furthermore, the agents testified to locating the same cellular telephone that Mr. Maciel used to speak with Sandoval-Velasco on March 14, 2010 inside Mr. Maciel's truck on August 1, 2010.

Following Mr. Maciel's conviction, the United States Probation Officer prepared Mr. Maciel's PSR on August 7, 2012. The PSR did not recommend any reduction to Mr. Maciel's offense level for his role in the offense pursuant to U.S.S.G. § 3B1.2. At his September 13, 2012 sentencing hearing, Mr. Maciel acknowledged that he received the PSR and reviewed it with his attorney. Further, the Court asked him if he had any comments, corrections, or objections to any of the information in the PSR, to which Mr. Maciel answered "no." (10 CR 652-1, R. 113, Sent. Tr., at 3-4.)

## LEGAL STANDARD

"[R]elief under § 2255 is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). More specifically, under Section 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise

4

subject to collateral attack." *Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). Accordingly, a Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (relief under 2255 "will not be allowed to do service for an appeal"); *United States v. Fleming,* 676 F.3d 621, 625 (7th Cir. 2012) ("A § 2255 petition is 'not a substitute for a direct appeal.'") (citation omitted). If a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, *see Sandoval v. United States,* 574 F.3d 847, 850-51 (7th Cir. 2009), or that enforcing the procedural default would lead to a "fundamental miscarriage of justice." *Fleming,* 676 F.3d at 625. Because claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Flores,* 739 F.3d 337, 341 (7th Cir. 2014).

## ANALYSIS

Construing his pro se Section 2255 motion liberally, *see McDowell v. Lemke,* 737 F.3d 476, 482 (7th Cir. 2013), Mr. Maciel contends that there was prosecutorial misconduct at trial because the government presented the testimony of two officers who falsely testified. Also, he alleges that he is actually innocent of all charges. He further asserts that his trial counsel was constitutionally ineffective for: (1) failing to establish his actual innocence; (2) failing to submit adequate motions or to make proper objections during trial and sentencing; (3) failing to allow

5

him to testify on his own behalf; and (4) failing to raise a minor-role reduction objection. Also, Mr. Maciel maintains that he received ineffective assistance of appellate counsel because appellate counsel failed to argue these issues on appeal.

I.      **Prosecutorial Misconduct Claim**

In his Section 2255 motion, Mr. Maciel argues that the government engaged in prosecutorial misconduct because it presented the testimony of two officers who, according to Mr. Maciel, falsely testified that (1) they arrested him; (2) his trailer was opened five days later; (3) he gave written permission the same day for inspection, and (4) he had $2,000 in his possession. Mr. Maciel does not identify the names of these officers or any other details regarding their testimony.

"When the government obtains a conviction through the knowing use of false testimony, it violates a defendant's due process rights." *United States v. Freeman*, 650 F.3d 673, 678 (7th Cir. 2011); *see also Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). To establish this due process violation, Mr. Maciel must establish: "(1) that there was false testimony; (2) that the government knew or should have known it was false; and (3) that there is a likelihood that the false testimony affected the judgment of the jury." *See id.*; *see also Morales v. Johnson,* 659 F.3d 588, 606 (7th Cir. 2011).

Setting aside the government's procedural default arguments, Mr. Maciel's bare-boned allegations do not establish that the prosecution violated his due process rights. Assuming his allegations that the officers falsely testified are true, Mr. Maciel has not argued, let alone established, that the government knew or should have known of this alleged false testimony. The government presented overwhelming evidence of Mr. Maciel's guilt and the credible

6

testimony was corroborated with the surveillance and wire tap evidence. Based on the overwhelming evidence of Mr. Maciel's guilt, including Title III interceptions and surveillance photographs, the Court would be hard-pressed to conclude that the alleged false testimony about Mr. Maciel's trailer, permission to search the trailer, the amount of money the officers recovered from him, and the officer's testimony about his arrest affected the judgment of the jury. *See United States v. Curescu,* 674 F.3d 735, 739 (7th Cir. 2012) ("an error that doesn't reduce the defendant's likelihood of being acquitted can't be a ground for reversal, because judges are not to use reversal to punish governmental misconduct."); *see, e.g., Griffin v. Pierce*, 622 F.3d 831, 843 (7th Cir. 2010). For these reasons, Mr. Maciel's prosecutorial misconduct claim fails.

## II.     Actual Innocence Claim

Mr. Maciel also brings a claim of actual innocence. The Supreme Court has held that "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Actual innocence, also known as the "fundamental miscarriage of justice exception," requires a "petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Because actual innocence is not a stand-alone constitutional claim, Mr. Maciel's reliance on his "actual innocence" is misplaced. The Court thus turns to Mr. Maciel's Sixth Amendment ineffective assistance of counsel claims.

## III.    Ineffective Assistance of Counsel Claims

### A.     Trial Counsel

To establish constitutionally ineffective assistance of trial counsel, Mr. Maciel must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Blake v. United States,* 723 F.3d 870, 879 (7th Cir. 2013). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Yu Tian Li v. United States,* 648 F.3d 524, 527-28 (7th Cir. 2011). To establish prejudice, Mr. Maciel must "show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable." *Blake,* 723 F.3d at 879.

### 1. Testify on His Own Behalf

Mr. Maciel argues that his trial counsel was constitutionally ineffective because he did not allow him to testify on his own behalf. Mr. Maciel's first ineffective assistance of counsel argument fails because it is not supported by the record. More specifically, at trial, the Court explained to Mr. Maciel that he had the right to testify on his own behalf and asked him whether he wanted to testify as follows:

> THE COURT: Mr. Peilet, have you discussed your client testifying with him?
>
> MR. PEILET: I have, your Honor.
>
> THE COURT: And what is his decision?
>
> MR. PEILET: Judge, I believe it's his decision at this point — and I informed him that

8

the choice of him whether to testify or not is a choice that is — the final decision rests with him; he cannot be compelled to testify, but certainly it is his choice.

THE COURT: Okay.

MR. PEILET: And he has decided, your Honor, based on conversations, not to testify.

THE COURT: Okay.

Would you please come forward with him, and if one of the interpreters would, I will advise him of his rights. Mr. Maciel, would you please come forward, sir. Come over here, please, if you would, Mr. Maciel.

Thank you.

Mr. Maciel, you understand, sir, you have been charged and you are now on trial for felony counts?

Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: And the government has rested its case. Now you have the opportunity to put on evidence and to testify, if you wish to do so. Do you understand that?

THE DEFENDANT: Yes, I do understand.

THE COURT: Mr. Maciel, you have an absolute right not to testify in this case. Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: And if you choose not to testify, I will instruct the jury that they cannot hold that against you in any way. Do you understand that, sir?

THE DEFENDANT: Yes.

> THE COURT: You also, however, have a right to testify, if you would like to do so. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: If you would like to testify, Mr. Maciel, I will tell the jury that they should judge your testimony the same as any other witness who comes in here and testifies. Do you understand that, sir?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Do you understand your rights in connection with testimony in this case, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you discussed these rights and your options with Mr. Peilet?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did he answer all of your questions regarding your rights and your options with respect to testifying, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions for me, sir, regarding your right to testify?
>
> THE DEFENDANT: No.
>
> THE COURT: Knowing your right, sir, what is your decision with respect to testifying?
>
> THE DEFENDANT: I'm not going to testify.
>
> THE COURT: Okay. Thank you, Mr. Maciel.

(10 CR 652-1, R. 112, 6/13/12 Tr. at 405-07.)

Based on this discussion, Mr. Maciel was aware of his right to testify and unequivocally

10

decided not to testify on his own behalf. In sum, Mr. Maciel's argument that his counsel "did not let me testify on my own behalf" is belied by the record. Therefore, there is no evidence that counsel's performance was deficient under the first prong of the *Strickland* standard. Moreover, Mr. Maciel does argue or explain how his testimony would have overcome the government's overwhelming evidence against him. As such, he has not established the *Strickland* prejudice prong.

### 2.     Failing to Object to Minor Role

Next, Mr. Maciel argues that his trial attorney was constitutionally ineffective because he failed to raise a minor-role objection at sentencing. On direct appeal, Maciel argued that the Court should have treated him as a minor participant under U.S.S.G. § 3B1.2. The Seventh Circuit explained why any such reduction did not apply under the circumstances:

> A reduction under § 3B1.2 depends on a conclusion that the defendant is substantially less culpable than the average participant in the offense. *See United States v. Leiskunas,* 656 F.3d 732, 739 (7th Cir. 2011). Maciel was a major-league courier. The evidence at trial documented his delivery of 20 kilograms of cocaine on one occasion and 45 kilos on another. He was a long-distance truck driver who added drugs to the manifest of legitimate cargo, receiving $2,000 for his services after each delivery. Evidence in the record shows that he dealt directly with the top of an organized drug-distribution network and transported cocaine regularly; the prosecutor's decision to stop with proof of two episodes does not imply that these were the limit of his responsibility.

*United States v. Maciel,* 527 Fed.Appx. 543, 544 (7th Cir. 2013).

The Sixth Amendment does not require counsel to make weak arguments because any such arguments "may distract the court from the strong arguments and as a result make it less likely to rule in the defendant's favor." *See United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003). Therefore, under the circumstances, Mr. Maciel has not established that trial counsel's

11

performance fell below the wide range of reasonable professional assistance. *See Yu Tian Li,* 648 F.3d at 527-28. Moreover, in light of the Court's sentencing findings pursuant to 18 U.S.C. § 3553, Mr. Maciel cannot establish that counsel's failure to request a reduction under U.S.S.G. § 3B1.2 prejudiced him.

On a final note, Mr. Maciel's arguments that trial counsel was constitutionally ineffective for failing to establish his "actual innocence" and failing to submit adequate motions or make proper objections during trial and sentencing are too vague and speculative for any meaningful consideration. As the Seventh Circuit explains, "[a]n ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct." *United States v. Hodges,* 259 F.3d 655, 660 (7th Cir. 2001). Therefore, these arguments are without merit.

B.     **Appellate Counsel**

As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland* to evaluate the effectiveness of appellate counsel. *See Warren v. Baenen,* 712 F.3d 1090, 1105 (7th Cir. 2013). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel raised on appeal. *See Blake,* 723 F.3d at 888; *Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010). In this context, appellate counsel need not raise every non-frivolous claim, but should select among claims to maximize the likelihood of success on appeal. *See Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *McNary v. Lemke,* 708 F.3d 905, 920 (7th Cir. 2013). To establish the *Strickland* prejudice prong, Mr. Maciel must show that "there is a reasonable probability that the

issues his appellate attorney did not raise would have altered the outcome of the appeal. *See Shaw v. Wilson*, 721 F.3d 908, 918 (7th Cir. 2013) *Brown v. Finnan,* 598 F.3d 416, 425 (7th Cir. 2010).

Here, Mr. Maciel contends that his appellate counsel was constitutionally ineffective because he did not appeal his prosecutorial misconduct claim, his actual innocence claim, and his various ineffective assistance of trial counsel claims and their underlying bases. As discussed above, none of Mr. Maciel's claims has merit and it is well-established that counsel cannot be constitutionally ineffective under the Sixth Amendment for failing to raise meritless claims. *See Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Warren,* 712 F.3d at 1104. Accordingly, Mr. Maciel's ineffective assistance of appellate counsel claim fails.

### IV. Evidentiary Hearing

Because the motion, files, and records of this case conclusively establish that Mr. Maciel is not entitled to any relief under Section 2255, the Court need not hold an evidentiary hearing under the circumstances. *See Yu Tian Li,* 648 F.3d at 532; *Koons v. United States,* 639 F.3d 348, 354-55 (7th Cir. 2011); 28 U.S.C. § 2255(b).

### V. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Therefore, the Court must determine whether to grant Mr. Maciel a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present Memorandum, Opinion, and Order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his Section 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.* at 336; *Fleming,* 676 F.3d at 625. Under this standard, Mr. Maciel must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Mr. Maciel has not established that jurists of reason would debate that the Court should have resolved his Section 2255 motion differently. As such, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The Court denies Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** May 8, 2014

                                            **ENTERED**

                                            *[signature]*

                                            **AMY J. ST. EVE**
                                            **United States District Court Judge**